**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JACK L. BENSINGER, JR., individually and in his capacity as the Administrator of the estate of BETH ANN BENSINGER, Deceased,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>TOWNSHIP OF HEGINS, a Pennsylvania Municipal Corporation, MIKE BEGIS, LEROY SHUEY, and BRAD CARL, individually and in their capacities as Supervisors of Hegins Township, STEVEN LOHR, individually an din his capacity as Chief of Police of Hegins Township, and OFFICER CADE HOLDEN of the Hegins Township Police Department,<br><br>　　　Defendants. | CIVIL ACTION NO. 3:15-CV-01450<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is a motion to dismiss Plaintiff Jack L. Bensinger, Jr.'s Complaint (Doc. 11) filed by the Township of Hegins, Mike Begis, Leroy Shuey, Brad Carl, Steven Lohr, and Officer Cade Holden ("Defendants"). Plaintiff's Complaint asserts claims for negligence, respondeat superior, due process violations, survival, and wrongful death, all of which arise from the tragic suicide of his wife that took place on March 24, 2013. Defendants move to dismiss the negligence and respondeat superior claims as barred by municipal immunity. They also move to dismiss the due process claims against Officer Holden for a failure to state a claim for a constitutional deprivation, and move to dismiss the due process claims against the remaining defendants for failure to state a claim that any harm came to the decedent as a function of any policy or custom. Finally, Defendants seek dismissal of the wrongful death and survival claims on the basis that Plaintiff failed to state

a viable claim for relief that his wife would have had. Because Plaintiff has failed to state a viable claim for any due process violations, and because Plaintiff's survival and wrongful death claims are dependent upon these due process violations, Defendants' motion to dismiss will be granted.

## I. Background

The facts as set forth in Plaintiff's Complaint are as follows:

On March 24, 2013, Plaintiff Jack Bensinger ("Plaintiff") and his wife Beth Ann Bensinger ("Mrs. Bensinger" or "the decedent") spent the day drinking and playing cards at a local social club. The two of them returned home early that evening in a state of heavy intoxication and began to quarrel. At approximately 6:40 PM, Officer Cade Holden was dispatched by the 911 Center to go to the Bensinger home in response to a woman asking for the police. Officer Holden found Mrs. Bensinger highly intoxicated, very upset, and locked in the bathroom, asking that Plaintiff be removed from the house. Mrs. Bensinger told Officer Holden that Plaintiff had not hit her but that she wanted him to leave. Mrs. Bensinger is believed to have come out of the bathroom to tell Officer Holden that Plaintiff had a place to go and then went back into the bathroom.

Officer Holden spoke to Plaintiff, who was also intoxicated, and arranged for him to contact family members to remove him from the residence. Officer Holden observed Plaintiff's brother and sister-in-law come and take him for the evening. He also observed Mrs. Bensinger's father come and remove the minor children from the residence.

Officer Holden then spoke to Mrs. Bensinger through the bathroom door and told her that her husband and children had left. He asked if she needed help or wanted him to call EMS, but she replied in the negative. Officer Holden did not ask anyone present if there were firearms in the house, nor did he take any steps to restrict any access to firearms Mrs. Bensinger may have had. At no point during the evening did Officer Holden call EMS or the

Schuylkill County Mental Health Services on-call caseworker to determine whether Mrs. Bensinger was in a mental health crisis and a danger to herself or others such that she needed intervention.  Rather, after making sure that Plaintiff and the minor children were taken away and with others to look after them, he left Mrs. Bensinger alone in the bathroom.

At approximately 10:04 PM that same evening, Officer Holden was again dispatched to the Bensinger residence for a woman requesting help from the police.  Officer Holden arrived at 10:10 PM and knocked on the door to no avail.  Rather than forcing entry, he went to Mrs. Bensinger's parents' home and asked her mother, Kay Morgan, to come open her daughter's house.  Officer Holden and Mrs. Morgan arrived at 10:26 PM and heard the shower running.  Mrs. Morgan entered the bathroom and found her daughter dead with a bullet wound to the chest and a rifle by the bathtub.  Mrs. Bensinger was pronounced dead at 11:10 PM by the deputy coroner.

On July 8, 2015, Plaintiff filed a six (6) count civil rights Complaint against Defendants in the Schuylkill County Court of Common Pleas.  Plaintiff's Complaint asserts the following claims: (1) negligence against Defendant Holden, (2) respondeat superior against the Township of Hegins and Defendants Begis, Shuey, Carl, and Lohr, (3) due process violations pursuant to 42 U.S.C. § 1983 ("section 1983") against Defendant Holden, (4) due process violations pursuant to section 1983 against the Township of Hegins and Defendants Begis, Shuey, Carl, and Lohr, (5) survival against all Defendants, and (6) wrongful death against all Defendants.  (Doc. 1-5, Ex. 4.)  On July 27, 2015, Defendants removed Plaintiff's action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (Doc. 1.)  On August 3, 2015, Defendants filed the instant motion to dismiss Plaintiff's Complaint. (Doc. 11.)  On September 14, 2015, Plaintiff filed his opposition to Defendants' motion to dismiss (Doc. 18) and on October 2, 2015, Defendants filed their Reply (Doc. 21). Defendants' motion has been fully briefed and is now ripe for disposition.

## II. Discussion

**A.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and

evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Plaintiff's Negligence and Respondeat Superior Claims**

Plaintiff has conceded that his negligence claims are barred by municipal immunity and is no longer pursuing these claims. (Doc. 18, at 4-5.) Accordingly, these

claims will be dismissed with prejudice.

Although Plaintiff did not make this same explicit concession with respect to his respondeat superior claim, this claim arose from his underlying negligence claim, and therefore is likewise barred.  Additionally, Plaintiff did not pursue this claim in his opposition to Defendants' motion to dismiss.  Accordingly, this claim will also be dismissed with prejudice.

**C.     Plaintiff's Due Process Claims**

Plaintiff also asserts due process claims against Officer Holden pursuant to section 1983 under the Fifth and Fourteenth Amendments.  In order to state a claim under section 1983, a plaintiff must show that the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States.  *Paratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).

Although the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, courts have recognized two (2) exceptions to this rule.  *Morse v. Lower Merion Sch. District*, 132 F.3d 902, 907 (3d Cir. 1997) (citations omitted).  The first is known as the "special relationship" exception, which allows a plaintiff to recover "when the state enters into a special relationship with a particular citizen . . . [and] fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty."  *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1369 (3d Cir. 1992).[1]  The second exception is the "state-created danger" theory of liability, which Plaintiffs invoke here.  Specifically, Plaintiff argues that Officer Holden's actions placed Mrs. Bensinger in far

---

[1] Although Plaintiff appeared to be asserting the "special relationship" exception in his Complaint, he has since abandoned this theory in his opposition to Defendants' motion to dismiss.  (Doc. 18, at 5.)

greater peril than before his involvement and, as such, he and the other Defendants are liable under the "state-created danger" theory of liability.

The state-created danger theory has its origins in the United States Supreme Court's decision in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989).  The Third Circuit Court of Appeals adopted the "state-created danger" theory in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).  In *Kneipp*, the Third Circuit adopted a four (4) part test, which was later modified in *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006).  This test holds a state actor liable if: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) there existed some relationship between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright*, 443 F.3d at 281.  The *Bright* panel noted that the fourth element can be broken down into three (3) parts:  (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all.  *Id.* at 281 n.5, 281-82.

In applying this four (4) factor test to the case at hand, it is evident that Plaintiff's state-created danger claim must fail.  First, the harm ultimately caused–Mrs. Bensinger's suicide–was not foreseeable and fairly direct.  In responding to a telephone call following a non-violent quarrel between spouses, Officer Holden arrived at the Bensinger residence, where Mrs. Bensinger was not asking for help as a result of any abuse and,

in fact, denied that her husband had caused her any harm.  There is no suggestion anywhere in the Complaint that Mrs. Bensinger had a mental illness or that Defendants should have been aware of whether she had a mental illness.  Defendants only knew that she had consumed alcohol, had a non-violent quarrel with her husband, and was in the safety of her own home.  Officer Holden even "asked [Mrs. Bensinger] if she needed help or wanted him to call EMS," but she denied both requests.  (Doc. 1-5, Ex. 4, Compl. ¶ 15.)  The mere fact that Officer Holden did not ask anyone present if there were firearms in the house or take any steps to ensure that Mrs. Bensinger had no access to firearms cannot make him liable for her suicide–it was not foreseeable that Mrs. Bensinger, who was in the comfort of her own home and lucid enough to give instructions, would commit suicide by a rifle shot simply because she was intoxicated.  Otherwise, police officers, who frequently come across intoxicated private citizens, would be required to follow and protect all of these citizens, not only from external harm, but from themselves.  This simply cannot be.  Additionally, as pointed out by Defendants, had Officer Holden searched for firearms and removed them from the residence, as Plaintiff suggests he should have, Plaintiff may well have been within his rights to assert a Fourth Amendment violation.  *Cf. Deshaney*, 489 U.S. at 202-03 (explaining that had the State intervened to prevent a father's abuse toward his son, it likely would have been met with charges of "improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection").  None of the cases cited by Plaintiff or found through this Court's independent research stretch the concepts of foreseeability and causation so far as to assign liability to Officer Holden for not anticipating that Mrs. Bensinger would commit suicide after a drunken, non-violent quarrel with her husband.

In his brief, Plaintiff relies on *Estate of Smith vs. Marascol*, 318 F.3d 497, 508 (3d Cir. 2003).  However, in *Smith*, the Third Circuit found that the first element of "foreseeable and fairly direct harm" was met because the defendant "officers on the scene were aware of [the decedent's] mental and physical condition, including his tendency to have flashbacks to his service in Vietnam under stressful situations, and once the search of the residence was conducted, at least some officers were aware that [the decedent] had fled without his necessary medication."  *Id.* at 507.  There was evidence that, "given [the decedent's] medical condition," **which the defendant officers were aware of**, "the stress of the incident probably led to a fatal heart attack."  *Id.* at 504-05.  The harm ultimately caused was foreseeable because the defendants were aware of the decedent's mental condition.  However, here, unlike in *Smith*, none of the Defendants had any prior relationship with the decedent, nor were they aware of any medical condition she may have had that would have warranted Officer Holden to take additional safety precautions.  Accordingly, this factor is not satisfied and Plaintiff's claim must be dismissed.

Although I need not address the remaining factors since it is sufficient for dismissal that the first factor is not satisfied, I will briefly address them here.  The second factor also is not satisfied here because it cannot be said that Defendants' conduct "shocked the conscience."  Officer Holden responded to both 911 calls placed from the Bensinger residence, assisted Mrs. Bensinger with her request that Plaintiff be removed from the residence, assisted in removing the children from the residence so that they would not have to be under the care of their intoxicated mother, ensured the children were taken to their grandparents, and ultimately calmed a hostile (but non-violent) situation.  As noted earlier, Officer Holden even asked if she needed help or wanted him to call EMS.  It was not until the situation had been calmed and these requests had been

9

denied that Officer Holden left the residence.

Plaintiff, citing *Estate of Smith vs. Marascol*, 318 F.3d 497, 508 (3d Cir. 2003), argues that the Third Circuit has "basically made this a test of how much time the officer has to reflect and consider upon the matter." (Doc. 18, at 8.)  However, that is a distortion of the Third Circuit's analysis.  Rather, in *Smith*, the Third Circuit, in analyzing the second factor of whether the defendant's conduct shocked the conscience, the Third Circuit stated that this "shock the conscience" standard "varies depending on the factual context." *Id.* at 508.  In that particular case, one of the facts that the Third Circuit considered was that it was not a case involving a "hyperpressurized environment," such as a prison riot or a high-speed chase, and noted that at least an hour had passed between the time that the defendant officers approached the residence and the time that a request to activate a Special Emergency Response Team was authorized.  *Id.* at 508-09.  However, the Third Circuit did not make the "time the officer has to reflect and consider upon the matter" the ultimate test.  Rather, the time that the defendant officers had to reflect on pursuing the search of the decedent, in addition to the defendant officers' ***awareness*** of the decedent's mental and physical condition, as well as other factors, collectively led the Court to believe that the "shock the conscience" standard may have been satisfied.  As noted earlier, however, this prior relationship with the decedent and awareness of the decedent's mental and physical condition that existed in *Smith* does not exist here.  Accordingly, *Smith* does not support Plaintiff's claim.

Similarly, the third factor, whether there existed some relationship between the state and the decedent that she was a foreseeable victim of the defendant's acts, also is not satisfied here.  Even under the facts as alleged in the Complaint, Plaintiff was more of a "member of the public in general," as opposed to a "discrete class of persons subjected to the potential harm brought about by the state's actions." *Bright v.*

*Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006).

Finally, with regard to the fourth factor, Defendants did not use their authority in any way that created a danger to the decedent or rendered her more vulnerable to danger than had Defendants not acted at all.  *See id.* at 282 ("[W]e have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.").  Officer Holden did not force Plaintiff to leave his wife against the decedent's wishes.  According to the Complaint, Plaintiff's family worked together to ensure that Plaintiff and the children had a place to go.  According to the Complaint, the Bensinger family all left of their own free will and at the request of the decedent.  Thus, there was no use of authority that brought about the decedent's tragic suicide.  Accordingly, none of the "state-created danger" factors are met here.

Plaintiff relies heavily on *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) in support of his position.  In *Kneipp*, the police stopped a visibly intoxicated and incapacitated woman and her husband outside on a cold evening for causing a public disturbance.  After letting the husband walk home to relieve their babysitter for the evening, who left under the assumption that the police were going to take his wife into custody or to the hospital, the police left the visibly intoxicated woman, whose blood alcohol level later was estimated at .25%, alone on the road outside in the cold.  The woman was found later that night unconscious at the bottom of an embankment next to a parking lot.  As a result of her exposure to the cold, she suffered hypothermia, which caused a condition known as anoxia, which in turn resulted in permanent brain damage impairing many basic bodily functions.  There, the Third Circuit concluded that "a reasonable jury could find that the harm likely to befall [the decedent] if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable" and could have led

11

directly to her injuries. *Id.* at 1208.  These facts are distinguishable from the facts at hand on several key aspects.  First, there was no officer-initiated police presence here like there was in *Kneipp*.  Rather, here, it was Mrs. Bensinger herself that called the police and asked them to come to her home.  Therefore, unlike in *Kneipp*, the situation was not "created" by the police.  Second, here, Mrs. Bensinger was in the warm comfort and shelter of her own home, rather than alone on a public roadway out in the cold where she could suffer hypothermia, like the woman in *Kneipp*.  It is far more foreseeable that harm could come to an intoxicated woman left alone out on the streets in the cold as opposed to an intoxicated woman left alone in the warm comfort and shelter of her own home.  Finally, Mrs. Bensinger was more lucid than the woman in *Kneipp*.  In *Kneipp*, the woman was visibly intoxicated, smelling of alcohol and urine, staggering and unable to walk on her own and unable to follow simple instructions.  *Id.* at 1201.  According to the Complaint, Mrs. Bensinger was lucid enough to advise Officer Holden that her husband "had not hit her but that she wanted him to leave."  (Doc. 1-5, Ex. 4, Compl. ¶ 10.)  She then came out of the bathroom and informed Officer Holden that her husband had a place to go, and then returned to the bathroom.  (*Id.* ¶ 11.)  Although intoxicated, Mrs. Bensinger was lucid enough to express her demands and give instructions to Officer Holden and to answer all questions he asked her.  Therefore, *Kneipp* does not support Plaintiff's case here.  Accordingly, Plaintiff's claim will be dismissed.

**D.     Plaintiff's *Monell* Claims**

Because Plaintiff has failed to state a claim upon which relief can be granted for Officer Holden's conduct, it is axiomatic that his *Monell* claims must also fail as a matter of law.  Because Plaintiff has failed to state a claim against any of the individual officers involved in the alleged deprivation of Plaintiff's constitutional rights, then any policy or custom that may have led to the action in question is of no moment from a constitutional

perspective. In the absence of an underlying constitutional tort, Plaintiff's *Monell* claim, which is founded upon an underlying constitutional tort, must fail as a matter of law. According, Plaintiff's *Monell* claims will be dismissed with prejudice.

Additionally, Plaintiff's *Monell* claims also fail because he has failed to specify exactly what the custom or policy was. *See McTernan v. City of New York*, 564 F.3d 636, 658 (3d Cir. 2009) (a claimant alleging municipal liability "must identify a custom or policy and specify exactly what the custom or policy was"). Rather, Plaintiff merely recites in general fashion that the Municipal Defendants "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mrs. Bensinger's constitutional and federal rights." (Doc. 1-5, Ex. 4, Compl. ¶ 49; *see also id.* ¶ 50 (asserting that Defendants "have created and tolerated a [sic] atmosphere of neglect, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practice, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff's Decedent").) Therefore, Plaintiff's *Monell* claims will be dismissed with prejudice.

### E. Plaintiff's Survival and Wrongful Death Claims

Finally, Plaintiff also asserts survival and wrongful death claims against the Defendants. However, Pennsylvania's Survival Statute does not provide an independent cause of action. Rather, it is a vehicle for the decedent's estate to pursue a cause of action that the decedent would have had, had she lived. 42 Pa.C.S. § 8302. Plaintiff's failure to assert plausible claims for relief is fatal to his survival and wrongful death claims. Accordingly, Plaintiff's survival and wrongful death claims will be dismissed.

### III. Conclusion

For the above stated reasons, all claims in Plaintiff's Complaint will be dismissed with prejudice.

An appropriate order follows.

March 30, 2016                       /s/ A. Richard Caputo
Date                                  A. Richard Caputo
                                          United States District Judge